IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHANDLER MANAGEMENT CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:12-CV-2541-L** |
| FIRST SPECIALTY INSURANCE CORPORATION; VERICLAIM, INC.; and JASON KEEN, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion to Remand, filed August 21, 2012. After careful consideration of the motion, response brief, reply brief, record, and applicable law, the court **grants** Plaintiff's Motion to Remand.

**I.    Background**

Chandler Management Corporation ("Plaintiff" or "Chandler") originally filed this action on June 25, 2012, against First Specialty Insurance Corporation ("First Specialty"); Vericlaim, Inc. ("Vericlaim"); and Jason Keen ("Keen") (collectively, "Defendants") in the 101st Judicial District Court, Dallas County, Texas. Chandler asserted claims for breach of contract, violations of Chapter 542 of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act ("DTPA"), unfair insurance practices in violation of Chapter 541 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Plaintiff seeks compensatory and exemplary damages, attorney's fees, and court costs.

On July 26, 2012, First Specialty removed the action to federal court, contending that diversity of citizenship exists between the parties because Keen was improperly joined and that the amount in controversy exceeds $75,000, exclusive of interest and costs. With respect to Keen, First Specialty contends that Chandler has not asserted "any specific claims against [ ] Keen." Notice of Removal 5, ¶ 15. Vericlaim and Keen contend that Plaintiff's allegations against Keen do not meet the requisite specificity and are vague and ambiguous. The crux of Defendants' argument is that Plaintiff's Original Petition (the "Petition") fails to allege a reasonable possibility of recovery against Keen, the in-state or nondiverse defendant, and that his joinder in the lawsuit is to defeat diversity jurisdiction and avoid a forum selection clause to which Chandler previously agreed. Defendants urge the court to address pending motions to dismiss or, alternatively, a motion to transfer, prior to deciding the remand motion.

## II.   Forum Selection Clause

First Specialty contends that this court should decline to rule on Plaintiff's motion because Chandler has agreed to exclusive jurisdiction in New York. According to First Specialty, Chandler irrevocably agreed to and submitted to the exclusive jurisdiction of the courts of the state of New York. The provision in question provides as follows:

> The laws of the State of New York, without regard to any conflict of laws rules that would cause the application of the laws of any other jurisdiction, shall govern the construction, effect, and interpretation of this insurance agreement.
>
> The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York, and to the extent permitted by law the parties expressly waive all rights to challenge or otherwise limit such jurisdiction.

Ins. Pol. for Chandler Management Issued by First Specialty Ins. Corp. 4. First Specialty contends that if the court remands the action, a remand allows Chandler to evade its agreement to litigate in a New York forum because a Texas state court cannot transfer directly a case to

**Memorandum Opinion and Order – Page 2**

another state's court. It further argues that this court can transfer this action to the United States District Court for the Southern District of New York pursuant to Federal Rule of Civil Procedure 12(b)(3), and 28 U.S.C. §§ 1404(a) and 1406(a). The court disagrees.

First Specialty misinterprets the phrase "Courts of the State of New York." In explaining similar language of a forum selection clause in a lawsuit between a citizen of Texas and one from Louisiana, the Fifth Circuit succinctly and aptly stated:

> The district court correctly interpreted the contract at issue. Federal district courts may be *in* Texas, but they are not *of* Texas. *Black's Law Dictionary* defines "of" as "denoting that from which anything proceeds; indicating origin, source, descent." Federal courts indisputably proceed from, and find their origin in, the federal government, though located in particular geographic regions.

*Dixon v. TSE Int'l, Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) (emphasis in original and footnote omitted). In *Dixon*, the language in question provided, "The Courts of Texas, U.S.A., shall have jurisdiction over all controversies with respect to the execution, interpretation or performance of this Agreement, and the parties waive any other venue to which they may be entitled by virtue of domicile or otherwise." *Id.* at 397. By the plain holding in *Dixon*, the United States District Court for the Southern District of New York is not a court *of* the state of New York. It is a federal court created by statute. *See* 28 U.S.C. § 112(b). The language in question therefore means that the parties agreed to conduct all litigation in a New York *state court*, rather than in a federal court in the State of New York. As there was no agreement for jurisdiction or venue *of* a federal court in New York, or elsewhere, this court may not transfer this action to another federal court pursuant to the forum selection clause.

A necessary corollary to this conclusion exists regarding transfer to a state court. "When the forum-selection clause designates an arbitral, foreign, or state court forum, a [federal] district court does not have the option of transferring the case to the designated forum because § 1404(a)

**Memorandum Opinion and Order – Page 3**

and § 1406(a) only allow for transfer within the federal system." *In re Atlantic Marine Constr. Co., Inc.*, 701 F.3d 736, 740 (5th Cir. 2012). Accordingly, the court has no authority to transfer this action to a state court of New York.

## III. Whether Remand or Dismissal and Transfer Should be Decided First

The parties argue whether the court should address the motion to dismiss and alternative motion to transfer before it addresses the motion to remand. The motion to remand necessarily involves jurisdictional issues. If "a court can readily determine that it lacks jurisdiction over the case [subject matter jurisdiction] or the defendant [personal jurisdiction], the proper course would be to dismiss on that ground." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007). The court readily and with minimal effort determines that complete diversity is lacking between Chandler and Defendants, and it therefore lacks subject matter jurisdiction to entertain this action. Further, there is no difficult or novel question of law presented by Chandler's motion to remand, and the court believes judicial economy strongly favors deciding the remand motion first.

## IV. Improper Joinder Standard

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 992 (2005). In *Smallwood*, the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred." *Id*. at 572. Accordingly, the court uses the term "improper joinder" in this opinion. As the party wishing to invoke federal jurisdiction by alleging improper joinder, First Specialty must establish that Keen was joined by Chandler to

defeat diversity of citizenship and therefore subject matter jurisdiction. Subject matter jurisdiction based on diversity of citizenship exists only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)), *cert. denied*, 541 U.S. 1073 (2004). In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).

To establish improper joinder, First Specialty must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since First Specialty does not assert fraud by Plaintiff, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that state law might impose

**Memorandum Opinion and Order – Page 5**

liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d at 312 (internal quotations and citations omitted). "This possibility, however, must be reasonable, not merely theoretical." *Id*. If there is a reasonable possibility that Plaintiff can recover on any of his claims, the case must be remanded. In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted).

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. "When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the petition for removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990).

## V. Discussion

### A. Plaintiff's Pleadings Relating to Keen

Whether this action should be remanded turns on the sufficiency of the allegations set forth in the Petition. Accordingly, the court begins its analysis with a review of the relevant allegations set forth against Keen in the Petition. The Petition sets forth the following allegations relating to Keen:

## IV. Facts of the Case

Chandler's apartment complexes known as the Courts of McCallum Apartments and the McCallum Glen Apartments at 7777 McCallum Blvd. and 7740 McCallum Blvd., Dallas, Texas have sustained roof damage caused by windstorm and hail. Chandler had purchased from First Specialty a commercial property insurance policy (Policy Number 03000059) for the policy period from November 15, 2010 to November 15, 2011 to cover property losses at these apartment complexes. This policy insured the complexes against damage and physical loss caused by windstorm and hail. On May 24, 2011, a wind and hail storm (CAT 48) caused damage to the roofs and some of the apartments in these complexes. Chandler reported this loss to First Specialty and their agents. In a September 9, 2011 letter, Paul Jost of Chandler also gave First Specialty written notice of its loss to these apartment complexes from CAT 48.

First Specialty thereafter hired an independent adjuster, Jason Keen of Vericlaim, to investigate and adjust these claims. Mr. Keen and Vericlaim thereafter hired Chad Augspurger and Brent Lochridge of United Building Sciences (hereafter "UBS") to evaluate the damage to the Courts of McCallum and the McCallum Glen Apartments. First Specialty, Vericlaim and Mr. Keen hire[d] Mr. Auspurger and Mr. Lochridge because they are biased for insurers and will prepare and provide result-oriented estimates and reports to help insurers and their adjusters low-ball windstorm and hail claims. True to form, in a January 16, 2012 report/estimate, Mr. Auspurger and Mr. Lochridge only found $19,161.02 in wind and hail damages to both the Courts of McCallum and the McCallum Glen Apartments. As a result, in a February 24, 2012 letter to Paul Jost of Chandler Management Corporation, Jason Keen of Vericlaim informed Mr. Jost on behalf of First Specialty that since the amount of damages did not exceed the $25,000 per occurrence deductible, there would be no payment forthcoming for the loss. In this respect, Vericlaim and Mr. Keen refused to pay a claim without conducting a reasonable investigation of that claim in violation of Section 541.060 of the Texas Insurance Code. In addition, Defendants' claims decision was based on their roofing consultants' belief and report that "unsealed shingles" or "shingle uplift" does not constitute physical damage from a windstorm. This decision is contrary to the July 15, 2011 Official Order of the Commissioner of Insurance of the State of Texas, Order No. 11-0587, that requires insurance coverage for "unsealed shingles" or "uplifted shingles" as direct physical loss from windstorm damage. In this respect, Vericlaim and Mr. Keen again violated Section 541.060 of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim on which the insurer's liability had become reasonably clear.

First Specialty and its adjusters and agents made this determination even after the insured's Texas licensed public insurance adjuster, Gary Pennington, supplied them with a December 29, 2011 engineering report from Peter de la

> Mora, P.E., concluding that CAT 48 had cause[d] significant damage to the apartment complexes. Mr. Pennington also had supplied Defendants with the information from the Texas Department of Insurance on "unsealed shingles" and "uplifted shingles" as direct physical loss and damage from a windstorm event. Based on this report, his inspection and experience with windstorm and hai1 damage claims, Mr. Pennington in a January 5, 2012 estimate found that both complexes had sustained windstorm and hail damage in the amount of $1,568,443.19. First Specialty, Vericlaim and Mr. Keen had this information, but ignored it before denying Chandler Management Corporation's windstorm and hail damage claim in their February 24, 2012 denial letter. Yet again, Vericlaim and Mr. Keen violated Section 541.060 of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim on which the insurer's liability had become reasonably clear. To date, Defendants have failed to pay Chandler for the proper repair of the damage to its apartments caused by windstorm and hail.

Pl.'s Orig. Pet. 2-4, § IV.

Chandler then sets forth how Keen allegedly violated provisions of the DTPA and Chapter 541 of the Texas Insurance Code. With respect to its claims of deceptive trade practices and unfair insurance practices, Chandler lists the specific sections of the statutes that were allegedly violated. Pl.'s Orig. Pet. 5-7, §§ VII, VIII. Critical to resolving the issue of the sufficiency of the allegations in the Petition is a determination as to whether the Texas or federal standard for pleadings applies.

### B. Pleading Standards - State and Federal

#### 1. State Requirements for Civil Pleadings

The state standard is more relaxed than the federal standard. Texas courts are not to "give pleadings a too cabined reading." *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex. 1995). Under Texas law, the pleading standard is one of "fair notice," "which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial." *Penley v. Westbrook*, 146 S.W.3d 220, 232 (Tex. App.—Fort Worth 2004, *rev'd on other grounds*, 231 S.W.3d 389 (Tex. 2007)). A

state court petition is to be liberally construed and is adequately pleaded if one can reasonably infer a cause of action from what is stated in the petition, even if the pleading party fails to allege specifically one of the elements of a claim. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (citations omitted).

### 2. Federal Requirements for Civil Pleadings

As previously stated, the federal standard is more stringent than the Texas pleading standard with respect to the sufficiency of the allegations to state a claim or cause of action. To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of

wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way,

when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### C. Applicability of Texas Pleading Standard

In an unpublished opinion, the Fifth Circuit applied Texas's "fair notice" pleading standard rather than the federal standard to determine whether the allegations of the petition in a removed case were sufficient to allege a claim under state law. *De La Hoya v. Coldwell Banker Mexico, Inc.*, 125 F. App'x 533, 537-38 (5th Cir. 2005). Although *De La Hoya* is unpublished, its application of the Texas pleading standard is logical. When a party files suit in a Texas court, such party expects to be governed by the rules of the game that apply to the civil pleading requirements of that state court system. The court does not believe that a pleader in state court should be so hapless that he, she, or it is put in the untenable position of having to anticipate removal to a federal court system that applies a more exacting pleading standard. Fundamental fairness compels that the standard applicable at the time the initial lawsuit was filed in state court should govern. For these reasons, the court applies the Texas "fair notice" standard to the allegations of the Petition.

### D. Whether Plaintiff's Pleadings Are Sufficient

The court acknowledges that Plaintiff's pleadings could be more specific, although they are not "bare-bones" pleadings. Texas courts, however, do not require much as to the sufficiency

**Memorandum Opinion and Order – Page 11**

of pleadings. This court cannot conclude that the allegations against Keen fall short of the "fair notice" standard that governs in the Texas court system.

The allegations of the Petition put all Defendants on notice that Chandler contends that Vericlaim and Keen declined to pay a claim without conducting a reasonable investigation of the claim. The Petition, as indicated, provides the bases for the allegations. The court's task at this juncture is merely to determine the sufficiency of the allegations, not whether Plaintiff will ultimately prevail on any claim. The question is whether Keen failed to properly investigate a claim before denying it. The Petition in this regard raises questions of bias and objectivity regarding those hired to investigate the claim. These allegations go to the heart of whether Keen and others denied the claim without a reasonable basis. This is a question that calls for resolution by the trier of fact, not the court. Likewise, there are allegations in the Petition that put Keen on notice whether he attempted in good faith to effect a prompt and fair settlement of claims on which First Specialty's liability had become reasonably clear.

Finally, the Petition sets forth a number of allegations that Plaintiff contends violate specific provisions of section 17 of the DTPA. Admittedly, the allegations are not as specific as those pertaining to Chapter 541; however, the court concludes that they are sufficient to pass the low threshold for pleading cases in Texas civil courts.

The allegations, taken as a whole, provide sufficient information to Defendants from which they can reasonably ascertain the causes of action against Keen under section 541.060 of the Texas Insurance Code and provisions of section 17 of the DTPA, and put them on notice as to what testimony will be necessary at trial. Accordingly, the court cannot find that there is no reasonable possibility of recovery by Chandler against Keen in state court for alleged violations of these sections of the Texas Insurance Code and the DTPA. The court therefore has no basis to

**Memorandum Opinion and Order – Page 12**

conclude that Keen was improperly joined. As Keen and Chandler are citizens of Texas, complete diversity of citizenship does not exist. As complete diversity of citizenship does not exist, the court lacks subject matter jurisdiction over this action and must remand it to state court.

## VI. Conclusion

For the reasons herein stated, the court determines that Jason Keen was not improperly joined as a defendant to defeat diversity jurisdiction, that complete diversity of citizenship between Plaintiff and Defendants is lacking, and that the court lacks subject matter jurisdiction over the action. The court **grants** Plaintiff's Motion to Remand and **remands** this action, pursuant to 28 U.S.C. § 1447(c), to the 101st Judicial District Court, Dallas County, Texas. The court **directs** the clerk of the court to remand this action in accordance with the usual procedure. The court finds it unnecessary to address other pending motions and declines to do so.

**It is so ordered** this 31st day of January, 2013.

_____
Sam A. Lindsay
United States District Judge